UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60890-CIV-ALTMAN/Hunt

RELIABILL SOLUTIONS, LLC,

    *Plaintiff*,

v.

MILESTONE DETOX, LLC,

    *Defendant*.

_____/

## ORDER GRANTING FINAL DEFAULT

The Clerk entered a Default [ECF No. 17] against the Defendant on December 29, 2020, because—despite having been served [ECF No. 12]—the Defendant failed to appear, answer, or otherwise respond to the Plaintiff's Complaint [ECF No. 1]. The Plaintiff then filed a Motion for Default Final Judgment (the "Motion") [ECF No. 19]. The Court has carefully considered the Motion, the record, and the applicable law. For the reasons set out below, the Motion is **GRANTED in part and DENIED in part**.

### BACKGROUND

The Plaintiff, ReliaBill Solutions, LLC ("ReliaBill"), provides "medical billing and revenue cycle management solutions." Compl. ¶ 1. The Defendant, Milestone Detox, LLC ("Milestone"), is a substance-abuse rehabilitation center. *See id.* On December 14, 2017, the two parties signed a contract, under which ReliaBill would provide Milestone with insurance claims processing and billing services. *See id.* ¶¶ 1, 16. Milestone would then pay ReliaBill for those services. *Id.*

ReliaBill began providing its services immediately after executing the contract. *See id.* ¶ 23. But Milestone eventually stopped paying its bills, leaving six outstanding invoices, and forced ReliaBill to terminate the contract. *See id.* ¶ 24. ReliaBill alleges that, in addition to failing to pay for services,

Milestone interfered with ReliaBill's performance of the contract by withholding the patient insurance information ReliaBill needed. *See id.* ¶ 28. ReliaBill claims that it lost revenues because of Milestone's breach of the contract and its non-payment of invoices. *See id.* ¶ 29.

ReliaBill filed this lawsuit on May 1, 2020, and attempted to serve Milestone at its listed business address in California. *See* Motion for Alternative Service [ECF No. 6] ¶¶ 5–9. After three months of failed attempts, ReliaBill filed its Motion for Alternative Service. *Id.* The Court granted that motion and allowed ReliaBill to serve Milestone through the California Secretary of State under Rules 4(h)(1)(A) and 4(e)(1) of the Federal Rules of Civil Procedure and CAL. CORP. CODE § 1702(a). *See* Order Permitting Alternative Service [ECF No. 10]. ReliaBill delivered the Complaint and Summons to the California Secretary of State on November 5, 2020, *see* Return of Service [ECF No. 11], which means that service was effectuated as of November 16, 2020 (i.e., ten days later),[1] *see* CAL. CORP. CODE § 1702(a). Milestone never filed a responsive pleading—much less one within the 21-day period set out in Rule 12(a)(1)(A)(i). *See generally* Docket.

After the Clerk entered default, ReliaBill filed this Motion—to which it attached three supporting affidavits. In the first affidavit, ReliaBill's corporate representative, Grant Lachman, attested that Milestone did not pay—but never disputed—the six invoices at issue; that Milestone interfered with ReliaBill's performance of the contract; that ReliaBill performed under the contract; that ReliaBill demanded payment of the invoices; and that ReliaBill ultimately lost revenue as a result of Milestone's breach of the contract. *See* Affidavit of Indebtedness in Support of Motion for Entry of Final Default Judgment ("Lachman Aff.") [ECF No. 19-1] ¶¶ 1–13. To support his claim to damages, Lachman attached the six invoices—for $264.22, $6,388.39, $4,852.23, $582.46, $4,318.88, $9,574.61, $6,931.65, and $287.23—totaling $33,199.67. *See id.* at Ex. B, pp. 2–9.

---

[1] Because November 15, 2020 was a Sunday, service wasn't complete until the 11th day—which was Monday, November 16, 2020. *See* FED. R. CIV. P. 6(a)(1)(C); CAL. CIV. PROC. CODE §§ 12 & 12b.

Mr. Lachman also claimed $59,627.87 in termination fees, which he calculated as follows:

> [Milestone] shall pay, as liquidated damages, a termination fee equal to (i) the greater of [(a) the most recent previous full month's total invoice for services prior to the Date of Provider's Written Notice of Termination multiplied by 6 or (b) the average of the previous 3 full month's invoice totals multiplied by 6], plus (ii) 50% of the outstanding receivables due to Provider for any billings submitted by ReliaBill within the last 120 days immediately preceding The Provider's Written Notice of Termination but not yet paid, plus the amount provided in paragraph 3 hereof for any additional payments made before The Effective Date of Termination.

Contract § 6(b).[2] Lachman then averred—without any supporting documentation—that the last three months' invoices were for $869.69, $11,783.88, and $15,963.00, for an average of $9,538.86. *See* Lachman Aff. at 3 n.1. Multiplying $9,538.86 by six gives us $57,233.14. Mr. Lachman then added some $2,394.73 in late fees, which brought his total up to $59,627.87. *See id.* Mr. Lachman did not, however, explain why he included the late fees as part of the termination-fee calculation. *See generally id.*; Motion.

One of ReliaBill's attorneys, Christopher B. Spuches, submitted the second affidavit, which lays out ReliaBill's request for costs and attorneys' fees. *See generally* Affidavit of Plaintiff's Counsel as to Attorneys' Fees and Costs ("Spuches Aff.") [ECF No. 19-2]. As the primary attorney on the case, Mr. Spuches—who usually bills at $525.00 an hour—charged ReliaBill $395.00 per hour. *See id.* ¶ 3. Attorneys Daniel Martinez and Jason A. Martorella also worked on the case and billed the file at $300.00 and $395.00 per hour, respectively. *Id.* ¶¶ 4–5. In addition, the firm employed three paralegals who billed ReliaBill at rates of $160.00, $140.00, and $125.00 an hour. *Id.* ¶ 7. Without itemizing any of these hours, Mr. Spuches requested a total of $17,922.35 in fees. *Id.* To this amount, he added $2,774.84 in costs, "including, without limitation, arbitration fees, arbitrator's fees, filing fees, and copies." *Id.* ¶ 8.

---

[2] Section 6(a) of the Contract provides that "[p]ayments that are made for all billing done by ReliaBill up to the Effective Date of Termination shall remain due and owing despite such termination."

3

In a third affidavit, Matthew E. Ladd reviewed Spuches's fee and cost requests and concluded that they were reasonable under Florida Bar Rule 4-1.5 and the factors outlined in *Fla. Patients Comp. Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985), and *Standard Guar. Ins. Co. v. Quantstom*, 555 So. 2d 828 (Fla. 1990). *See* Affidavit as to Reasonableness of Attorneys' Fees ("Ladd Aff.") [ECF No. 19-3].

### THE LAW

Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes courts to enter a final default judgment against any party who has failed to respond to the complaint. "A defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (cleaned up) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, the trial court must first determine whether there is a sufficient factual basis in the complaint to sustain the judgment. *See id.*; *see also Annon Consulting, Inc. v. BioNitrogen Holdings Corp.*, 650 F. App'x 729, 733 (11th Cir. 2016) ("Because the allegations in [the] complaint—admitted as true—establish Defendants' liability . . . , default judgment was appropriate."). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

Rule 55(b)(2) also provides that a court may conduct hearings or make referrals "when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Despite the Rule's permissive language, a "judgment of default awarding cash damages [can]not properly be entered 'without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation.'" *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543 (11th Cir. 1985) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). Damages may be awarded "only if the record adequately reflects the basis for [the] award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Id.* at 1544 (internal quotation marks omitted).

## ANALYSIS

### I.   Default Judgment

For two reasons, the Court grants ReliaBill's Motion on the issue of Milestone's liability. *First*, the Court is satisfied that it may exercise subject-matter jurisdiction over the case and personal jurisdiction over Milestone. Starting with subject-matter jurisdiction, ReliaBill alleged that (1) it suffered damages of not less than $109,427.38; (2) it is a Delaware limited liability company with members who are citizens of Florida; and (3) Milestone is a California limited liability company whose members are not citizens of Florida. *See* Compl. ¶¶ 5–8, 26; *see also* 28 U.S.C. § 1332(a) (providing that district courts have jurisdiction over actions where the matter in controversy exceeds $75,000 and the action is between citizens of different states); *Silver Crown Invs., LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316, 1324 (S.D. Fla. 2018) ("For purposes of determining diversity jurisdiction, the citizenship of a limited liability corporation (LLC) is the citizenship of each of its members.").

Turning to personal jurisdiction, ReliaBill alleged that Milestone engaged in a business venture through an agent in Florida, that it failed to fulfill obligations under a contract that had to be performed in Florida, and that it engaged in substantial activity in Florida. *See* Compl. ¶ 10. Specifically, ReliaBill averred that the parties signed the contract in Delray Beach, Florida, and that the contract required Milestone to provide information and make payments to ReliaBill in Florida. *Id.*; *see also* Contract §§ 2, 3. These activities plainly fall within the ambit of Florida's long-arm statute. *See* FLA. STAT. § 48.193(1)(a); *see also Argos Global Partner Servs., LLC v. Fabio Ciuchini*, 2020 WL 1166719, at *10 (S.D. Fla. Mar. 11, 2020) ("These contract allegations make a prima facie case [the defendant] failed to pay a contractual debt where payment is due to be made in Florida, which is sufficient to satisfy Florida's long-arm provision that refers to contractual acts required to be performed in Florida." (cleaned up)); *Nationwide Equipment Co. v. Allen*, 2005 WL 2620542, at *2 (M.D. Fla. Oct. 14, 2005) ("When the defendant is a corporation, it may subject itself to jurisdiction through the actions of its agents acting

on behalf of the corporation.").

*Second*, ReliaBill has made out a prima facie case on the merits. ReliaBill asserted four causes of action in its Complaint: (1) breach of contract; (2) unjust enrichment (in the alternative); (3) account stated; and (4) open account. Although Florida law recognizes a claim of account stated, *see First Union Disc. Brokerage Servs., Inc. v. Milos*, 997 F.2d 835, 841 (11th Cir. 1993) (collecting cases), ReliaBill now pursues default judgment only as to the breach-of-contract claim. *See* Motion at 7–10.[3]

"Under Florida law, to prevail in a breach of contract action, a plaintiff must prove the following three elements: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Hostway Servs., Inc. v. HWAY FTL Acquisition Corp.*, 2010 WL 3604671, at *5 (S.D. Fla. Sept. 13, 2010). The well-pled allegations (and exhibits) of the Complaint establish both the existence and the validity of the contract. *See* Compl. ¶¶ 1, 16, 34; *see generally* Contract. Moreover, ReliaBill has plausibly alleged that it performed properly under the contract, that Milestone breached the contract, and that the breach caused ReliaBill's damages. *See* Compl. ¶¶ 21–29.

The Complaint and Motion also establish that the contract's liquidated-damages provision—which kicks in once the contract is terminated prematurely—is enforceable. "A liquidated damages provision in a contract is enforceable so long as (1) damages as a result of the breach were not readily ascertainable at the time of the contract and (2) the sum stipulated is not grossly disproportionate to any damages that might reasonably be expected to flow from the breach, otherwise it is a penalty and unenforceable." *EBSCO Gulf Coast Dev., Inc. v. Salas as Trustee of Salas Children Trust dated September 28, 2009*, 2018 WL 7288764, at *11 (N.D. Fla. Aug. 1, 2018). In our case, the extent of the damages ReliaBill suffered as a result of the contract's early termination were uncertain when the parties signed the contract because the contract involved ongoing billing processes rather than, for example, an

---

[3] N.B. This doesn't matter for purposes of ReliaBill's damages, which all flow from the breach-of-contract claim.

exchange of a product for a sum certain. *See* Compl. ¶ 28. ReliaBill also points out that Milestone has access to—and can use without paying—ReliaBill's "unique billing combinations" and other proprietary information. *See* Motion at 10. Finally, there is no reason to believe that the liquidated-damages provision would yield damages "grossly disproportionate" to the actual damages ReliaBill has suffered.

ReliaBill, in short, has plausibly alleged that Milestone is liable for its damages.

## II.     Damages and Attorneys' Fees and Costs

Having established liability, ReliaBill seeks $113,524.73 in damages, broken down as follows: $59,627.87 in liquidated damages for the early termination of the contract; $33,199.67 in unpaid invoices; and $20,697.19 in attorneys' fees and costs. *See id.* at ¶¶ 12, 14. But, from the scant evidence ReliaBill has adduced, the Court cannot accurately determine the scale of ReliaBill's damages.

Even in the context of a default judgment, "[a] court has an obligation to assure [itself] that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co.*, 777 F.2d at 1544 (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for the award). Rule 55 thus gives courts "broad discretion to determine what additional evidence, if any, is required to enter default judgment." *C & M Inv. Grp., Ltd. v. Campbell*, 448 F. App'x 902, 906 (11th Cir. 2011).

Here, although ReliaBill's request for $33,199.67 is readily calculable from the Motion, the supporting affidavits, and the invoices, ReliaBill doesn't similarly support its separate claim to the termination fee. *See generally* Motion. Nor does ReliaBill explain how the contract's early-termination provision entitles it to an additional $2,394.73 in late fees. *See generally id.*; *cf.* Contract § 6(b). And, while ReliaBill has established its entitlement to attorney's fees and costs, *see* Contract § 10(k), it does not provide sufficient evidence to justify the *amount* of fees and costs it has requested. So, for instance, Mr. Spuches attests to certain billing rates and a total dollar amount, but he does not set out the

specific hours each lawyer and paralegal worked on the case. *See* Spuches Aff. ¶¶ 3–7. And, although Mr. Ladd opines about the reasonableness of the hourly rates and swears that he's reviewed the billing records, he doesn't append those records to his affidavit. *See generally* Ladd Aff. Nor does he disclose the hours each lawyer and paralegal billed on the case. *Id.* Without this information, the Court cannot say whether the fees *are* reasonable. *Cf. Colonial Van Lines, Inc. v. Colonial Moving & Storage, LLC*, 2020 WL 6700449, at *8 (S.D. Fla. Oct. 20, 2020) (determining the reasonableness of attorneys' fees based on counsel's redacted time records). Similarly, ReliaBill never itemizes its request for $2,774.84 in costs, nor does it explain why those costs included "arbitration fees" and "arbitrator's fees." *See* Spuches Aff. ¶ 8.

\*   \*   \*

Accordingly, the Court hereby **ORDERS and ADJUDGES** that the Plaintiff's Motion for Default Final Judgment [ECF No. 19] is **GRANTED in part and DENIED in part**. ReliaBill may file a supplemental motion for damages and attorneys' fees and costs by **February 4, 2021**. If ReliaBill does not file a supplemental motion by that date, the Court will enter final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure. The Clerk of Court shall **CLOSE** this case. All other deadlines are **TERMINATED**, and all other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 20th day of January 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record